UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHARON M. KOVARIK,

        Plaintiff,

-v.-                                              3:11-cv-00509 NPM

MICHAEL ASTRUE,
Commissioner of Social Security,

        Defendant.

-----------------------------------------------------------------------------------------------------

| APPEARANCES: | OF COUNSEL: |
|---|---|
| Office of Jonathan P. Foster<br>Attorney for Plaintiff<br>407 South Main Street<br>Athens, PA 18810 | Jonathan P. Foster, Esq. |
| Social Security Administration<br>Attorneys for Defendant<br>Office of Regional General Counsel<br>Region II<br>26 Federal Plaza - Room 3904<br>New York, NY 10278 | Sergie Aden, Esq.<br>Suzanne M. Haynes, Esq. |

NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM - DECISION AND ORDER

      This action was filed by plaintiff Sharon M. Kovarik ("plaintiff") pursuant

to 42 U.S.C. § 405(g) to review the final determination of the Commissioner

("Commissioner") of the Social Security Administration ("SSA"), who denied her application for disability insurance benefits ("DIB"). Currently before the court is plaintiff's motion for judgment on the pleadings (Doc. No. 12) seeking reversal of the Commissioner's decision with a finding of disability and a remand for the purpose of determining benefits, or in the alternative, an order of remand for further administrative proceedings. Also before the court is the Commissioner's motion for judgment on the pleadings (Doc. No. 15) seeking affirmation of the Commissioner's findings. For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's motion is denied.

## I.     Procedural History and Facts

### A.     Procedural History

On September 25, 2000, Kovarik filed for DIB, alleging a disability onset date of April 1, 1993. The application was denied initially and on reconsideration. On January 29, 2002, a hearing was held before Administrative Law Judge Franklin T. Russell ("ALJ Russell"). On August 29, 2002, ALJ Russell issued an unfavorable decision against Kovarik. On October 17, 2002, the Appeals Council concluded there was no basis under the regulations to grant Kovarik's request for review, thus rendering ALJ Russell's decision the final decision of the Commissioner. Kovarik filed a complaint with this court on September 11, 2003

("the 2003 case".)[1]

On February 19, 2008, the Magistrate Judge assigned to the 2003 case filed a comprehensive and thoughtful Report- Recommendation, recommending that the Commissioner's decision denying disability benefits be affirmed.  Plaintiff filed a timely objection, bringing to the court's attention that the ALJ presiding over plaintiff's hearing, ALJ Russell, was reprimanded by the SSA for a litany of violations (see Doc. No. 31 in Case 6:03-cv-01114-LEK-RFT ).  Accordingly, the SSA Office of Hearings and Appeals authorized "voluntary remands of all pending district court cases in which ALJ Russell was the deciding official for a new hearing before a different ALJ." Id.  The district court noted the voluntary remand agreement of the SSA, and stating that "the Court does not reject the Report-Recommendation because of any flaw in the Report-Recommendation, but because of new information about ALJ Russell," the case was remanded on March 6, 2008 for a hearing before a different ALJ. Doc. No. 32.

By letter dated May 12, 2009, Administrative Law Judge Elizabeth Koennecke (the ALJ") informed plaintiff's counsel that she was instructed by

---

[1] See Civil Docket # 6:03-cv-01114-LEK-RFT.

order of the SSA to <u>offer</u> plaintiff a supplemental hearing. Tr.[2] 463. Responding by letter on May 29, 2009, counsel for plaintiff requested the supplemental hearing, and asked the ALJ if he could provide additional medical records. Counsel stated that he trusted that "any medical evidence submitted after the date last insured would not be considered relevant" but asked if the ALJ would "consider such evidence to document the conditions that existed prior to the date last insured." Tr. 465. The ALJ responded with "[w]hat I am trying to avoid is the mindless submission of updated treatment notes in a case with a remote date last insured; which is so often the case." Tr. 465. The ALJ requested that if counsel was submitting any evidence that falls after the date insured, he should be sure to indicate why it is relevant to the period at issue by way of a letter brief. The court notes that there are over 200 pages of medical records in the administrative transcript dated after plaintiff's date last insured, with no meaningful explanation by plaintiff's counsel as to the relevancy of the medical evidence. The court has dutifully read every page, and finds the information largely irrelevant to the relevant time period in the instant case.

    B.    Facts

A hearing was held before the ALJ on November 10, 2009. The ALJ held a

---

[2] References to the Administrative Transcript are denoted as "Tr. __".

video hearing, with the plaintiff appearing in Binghamton, NY, and the ALJ presiding over the hearing from Syracuse, NY.  The ALJ issued an unfavorable decision on December 9, 2009. That decision, which the Appeals Council declined to review, is the final decision of the Commissioner.  Plaintiff commenced this civil action on May 3, 2011, seeking judicial review of the Commissioner's final decision.

    The court presumes familiarity with the underlying facts of this case, as succinctly set forth in the Report and Recommendation in the 2003 case, which considered the same time period at issue in the case currently before the court. The court will reiterate certain facts as necessary.  The following additional facts are taken from the plaintiff's statement of the facts, which is incorporated by reference by the Commissioner with the exception of any inferences, suggestions or arguments therein.  Where pertinent facts are missing, those facts are drawn from the Report-Recommendation in the 2003 case.

    Plaintiff was born on August 13, 1946, and was fifty-fours years old when she filed her application for benefits.  Plaintiff has her high school degree. Plaintiff was last insured on June 30, 1998.  She alleges she has suffered from panic disorder, anxiety attacks and depression since 1965, when she was 19 years old.  She last worked in a bakery in 1993, when her panic attacks reappeared, and

while she was also suffering from insulin dependent diabetes mellitus, obesity, hypertension, and degenerative joint disease.  She was treated for her mental disorders in Binghamton, New York in 1965 and treatment has been continuing since 1981, with plaintiff consulting several psychiatrists and psychologists. Plaintiff was treated at the Guthrie Clinic and Robert Packer Hospital Behavior Science Unit, Sayre, Pennsylvania.  On May 3, 1998, plaintiff went to the emergency room with high blood pressure, and subsequently alleged that she suffered a "mini stroke" which caused memory loss, physical problems including a tremor and unsteady gait, dizzy spells/ disequilibrium.[3]

## II. Discussion

Plaintiff first submits that the ALJ erred when she failed to give appropriate weight and credibility to the treating source opinions of  Drs. Ryan, Kumar, Litchenstein [sic], Nedelcu and Fahmy, and failed to identify any objective medical evidence to rebut their findings.  Next, she argues that the ALJ failed to fulfill her affirmative duty to assist the claimant in development of the record,

---

[3]  Although plaintiff self-reported throughout the record that she suffered a mini-stroke in May of 1998, telling each new doctor that she had a history of transient ischemic attacks (TIA) which was duly recorded, the court finds no corroboration in the record that plaintiff was diagnosed as experiencing a TIA.  In a letter to the Appeals Council dated January 8, 2010, plaintiff's attorney alludes to "several mini-strokes" suffered by plaintiff in May 1998. Tr. 389. Plaintiff's counsel notes that the alleged mini-stroke(s) happened within the time frame that plaintiff was last insured, i.e., before June 30, 1998. Doc. No. 12, p.6.

failed to consider the plaintiff's combination of impairments, and placed improper reliance on the grids.  Finally, plaintiff argues that the ALJ failed to properly address the testimony of plaintiff regarding her usual daily activities.  The Commissioner argues that the ALJ's decision, finding that plaintiff was not disabled, is supported by substantial evidence and therefore must be affirmed.

### A.     Standard of Review

This court does not review a final decision of the Commissioner de novo, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the

Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).

  B. **Disability Defined**

An individual is considered disabled for purposes of his or her eligibility for Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security Disability to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition. See 20 C.F.R. § 404.1520. The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to determine whether the claimant is presently employed. If the claimant is not employed, the Secretary then determines whether the claimant has a "severe impairment" that limits [his] capacity to work. If the claimant has such an impairment, the Secretary next considers whether the claimant has an impairment that is listed in Appendix 1 of the regulations. When the claimant has such an impairment, the Secretary will find the claimant disabled. However, if the claimant does not have a listed impairment, the Secretary must determine, under the fourth step, whether the claimant possesses the residual functional capacity to perform [his] past relevant work. Finally, if the claimant is unable to perform [his] past relevant work, the Secretary determines whether the claimant is capable of performing any other work. If the claimant satisfies [his] burden of proving the requirements in the first four steps, the burden then shifts to the Secretary to prove in the fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine

9

whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." Gainful work activity is defined as "work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a-b) (West 2009).

### C. Credibility Assessment

An ALJ is required to evaluate a claimant's credibility concerning pain according to the factors set forth in 20 C.F.R. § 404.1529, which states in pertinent part that:

> [i]n determining whether you are disabled, we consider all

> your symptoms, including pain, and the extent to which
> your symptoms can reasonably be accepted as consistent
> with the objective medical evidence and other evidence ...
> These include statements or reports from you, your
> treating or examining physician or psychologist, and
> others about your medical history, diagnosis, prescribed
> treatment, daily activities, efforts to work, and any other
> evidence showing how your impairment(s) and any
> related symptoms affect your ability to work. We will
> consider all of your statements about your symptoms,
> such as pain, and any description you, your physician,
> your psychologist, or other persons may provide about
> how the symptoms affect your activities of daily living
> and your ability to work.

20 C.F.R. § 404.1529 (West 2007).

Social Security Ruling ("SSR") 96-7p governs how ALJs may evaluate the credibility of an individual's statements. Stated here in pertinent part:

> The purpose of this Ruling is to clarify when the
> evaluation of symptoms, including pain, under 20 CFR
> 404.1529 and 416.929 requires a finding about the
> credibility of an individual's statements about pain or
> other symptom(s) and its functional effects; to explain the
> factors to be considered in assessing the credibility of the
> individual's statements about symptoms; and to state the
> importance of explaining the reasons for the finding about
> the credibility of the individual's statements in the
> disability determination or decision. In particular, this
> Ruling emphasizes that:
>
> 1. No symptom or combination of symptoms can be the
> basis for a finding of disability, no matter how genuine
> the individual's complaints may appear to be, unless there
> are medical signs and laboratory findings demonstrating
> the existence of a medically determinable physical or

mental impairment(s) that could reasonably be expected to produce the symptoms.

2. When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects.

3. Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.

4. In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

> 5. It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered"or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7 (See www.ssa.gov/OP_Home/rulings/di/01/SSR96-07-di-01.html)(2012).

**D.   Analysis**

    1.   The ALJ's findings.

In the case at bar, the ALJ applied the five-step sequential evaluation process and determined that plaintiff (1) meets the insured status requirement of the Social Security Act through June 30, 1998; (2) did not engage in substantial gainful activity during the period between her alleged onset date of April 1, 1993 through her date of last insured of June 30, 1998 (20 CFR 404.1571 et seq.; (3) has the following severe impairment: mood disorder (variously characterized) (20 CFR §§ 404.1520(c)); (4) through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR

13

404.1520(d), 404.1525 and 404.1526). Specifically, the ALJ considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. The ALJ found that plaintiff had no limitations in her activities of daily living, only moderate limitation maintaining social functioning, and no limitation maintaining concentration, persistence or pace, and there were no episodes of decompensation of limited duration during the period. The ALJ found that plaintiff provided a home for herself and her children, performed a great deal of childcare, and actually complained about all the household chores she was performing. Tr. 402. Accordingly, the "paragraph B" criteria were not satisfied.

At Step 5, the ALJ held that after careful consideration of the entire record, plaintiff had no exertional limitations. Plaintiff "retained the ability (on a sustained basis) to understand, carry out, and remember simple instructions, respond appropriately to supervision, coworkers, and usual work situations and deal with changes in a routine work setting." Tr. 402.

The ALJ noted that because the date plaintiff was last insured was June 30,

1998, it must be found that plaintiff was disabled at least as of June 30, 1998 if she is to be found entitled to the requested benefits at any time thereafter. Accordingly, the ALJ asserted that evaluation of the record must first be directed to the period prior to July 1, 1998, and if disability is not found, there is no need to consider it after June 30, 1998.  The ALJ ultimately found that the medical record revealed that the plaintiff developed significant limitations after the date last insured, but "with disability not established prior to July 1, 1998, the presence of severe impairments thereafter is of no consequence to the period under review." Tr. 404C.  The ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act from April 1, 1993 through the date last insured.

    2.    Plaintiff asserts that the ALJ substituted her own opinion for that of plaintiff's treating physicians, which was error warranting reversal.  The Commissioner counters that the ALJ properly considered the medical and other evidence in the record in finding that plaintiff was not disabled.  The court has thoroughly reviewed the vast medical record in this case, including, as stated above, the hundreds of pages of medical records beyond the plaintiff's date of last insured.  The Commissioner argues, and the court concurs, that the record contains extensive treatment notes from plaintiff's doctors during the relevant period, and

the evidence shows that, despite instances of increased symptoms due to family-related situational stressors, plaintiff maintained a level of functioning that enabled her to perform housework and take care of her grandchildren. The ALJ properly considered this evidence, applied the correct legal standards, and accordingly, the ALJ's decision is affirmed on this issue.

Plaintiff next argues that the ALJ failed to fulfill her affirmative duty to develop the record. The ALJ noted that "[w]hen testifying in 2009 it was apparent that [plaintiff] has serious memory issues ... Her representative, a lawyer, led her through the testimony and she pretty much agreed with whatever he said ... However, her previous testimony was also considered." Tr. 403A. Plaintiff's counsel argues that given plaintiff's current mental health issues, the ALJ should have "shown some compassion and at least provided minimal assistance in developing the record instead of going out of her way to deny benefits to a deserving plaintiff." Doc. No. 12, p. 24. The record in this case is vast and comprehensive, totaling 721 pages. Plaintiff's counsel does not indicate how the ALJ should have developed the record, or what, in counsel's estimation, was missing. The court finds that the ALJ possessed a full medical history, and did not err in not attempting to develop what was already an adequate record.

Regarding plaintiff's assertions that the ALJ failed to consider the plaintiff's

combination of impairments, and placed improper reliance on the grids, the court finds plaintiff's arguments unavailing.  Plaintiff's counsel sets forth case law on the issues of applying correct legal standards, and of reliance on the grids, but does not make a specific argument regarding how the ALJ erred in the instant case.  The Commissioner argues that plaintiff relies on evidence subsequent to the relevant period, and that the ALJ considered this evidence and noted that it was not probative on the issue of plaintiff's disability during the relative period.  The court finds that the ALJ did not err on these issues.

Finally, plaintiff argues that the ALJ failed to properly address the testimony of plaintiff regarding her usual daily activities, specifically, "[t]he ALJ is an err [sic] to interpret school age grandchildren who wait for the school bus at their grandparents [sic] house would represent something more than the daily activities of the plaintiff." Doc. No. 12, p. 29.  The court notes ample evidence in the record that plaintiff self-reported that she was taking care of grandchildren, houses, and dogs.  On February 22, 1998, Dr. Kumar wrote that plaintiff stated that her daughter-in-law had left her son, and plaintiff was taking care of two grandchildren, three houses, and her son's dogs as well as her own, and was spending hours cleaning and taking care of laundry.  On March 10, 1998, plaintiff stated that her work load had increased, and she was also babysitting her friend's

daughter while her friend attended college. Tr. 161.  The court also notes that during the relevant time period, there were discrepancies throughout the record in plaintiff's inconsistent reporting of her physical ailments.  The court finds that the ALJ did not err in her assessment of plaintiff's credibility.

### III.  Conclusion

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings (Doc. No. 12) is DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. No. 15) is hereby GRANTED.  The Clerk is instructed to close this case.

SO ORDERED.

August 15, 2012

_____
Neal P. McCurn
Senior  U.S. District Judge